```
              UNITED STATES DISTRICT COURT
                DISTRICT OF NEW HAMPSHIRE
```

Martha Schoendorf

    v.                                                      Civil No. 11-cv-566-JL
                                                             Opinion No. 2012 DNH 094

RTH Mechanical
Contractors, Inc.

**MEMORANDUM ORDER**

The plaintiff, Martha Schoendorf, moves to transfer this employment discrimination action from this court, where she originally filed it, to the United States District Court for the District of Maine--where she lives, where all of the allegedly unlawful conduct took place, and where most of the third-party witnesses to that alleged conduct reside. Despite these undisputed facts, the defendant, RTH Mechanical Contractors, Inc., located in New Hampshire, opposes the transfer, arguing that Schoendorf has failed to carry her burden of showing that transfer is appropriate. For the reasons explained infra, the court disagrees, and grants Schoendorf's motion to transfer.

**I.   Background**

Schoendorf, who lives in Augusta, Maine, worked as an apprentice pipefitter for RTH on its job at a Veterans Administration facility there. She alleges that her foreman "made frequent degrading sex-based comments" about her, beginning

with his arrival on the job site in early October 2009 and culminating in an incident in late November 2009 when he "lost his temper" with Schoendorf and called her a "c--t" and a "bitch." Schoendorf alleges that, in response, she told the project manager to "document the hostile comments or she would contact the Human Rights Commission." She further alleges that, at a subsequent meeting with the project manager, the foreman, and a union representative, the project manager "threatened [Schoendorf] that if she wanted to document the incident," he would "write [her] up for everything and document all of it."

Schoendorf, proceeding pro se, filed a charge of discrimination with the Equal Employment Opportunity Commission, alleging that RTH had discriminated against her on the basis of her sex, and retaliated against her for opposing the discrimination, in violation of Title VII of the Civil Rights Act of 1964. See 42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a). While the form used to file the charge lists the New Hampshire Human Rights Commission ("NHRC") as the "State or local agency," Schoendorf attributes this to an error by the EEOC, and has submitted an affidavit from the NHRC's executive director supporting that conclusion, and attesting that the NHRC never took any action on the charge. For its part, the EEOC conducted an investigation

that, in its view, failed to show a violation of Title VII.  The EEOC accordingly issued Schoendorf a notice of her right to sue.

Schoendorf then commenced this action on December 7, 2011, bringing separately numbered claims against RTH for a discriminatory hostile environment and retaliation in violation of both Title VII and the analogous provisions of the New Hampshire Law Against Discrimination, N.H. Rev. Stat. Ann. § 354-A:7 ("NHLAD").  RTH responded by filing a motion to dismiss the hostile environment claim under federal law and both the hostile environment and retaliation claims under New Hampshire law (but not the retaliation claim under federal law).  See Fed. R. Civ. P. 12(b)(6).  RTH argued, among other things, that the New Hampshire Law Against Discrimination "does not extend extraterritorially to allegations of a resident of Maine for acts occurring at a workplace in Maine."

In response, counsel for Schoendorf contacted the NHRC, asking "why the Charge of Discrimination had been accepted at the [NHRC] if the allegedly discriminatory acts had occurred in Maine."  It was in response to this inquiry that Schoendorf says she learned, for the first time, that her charge had erroneously listed the NHRC as the responsible state or local agency and that "the NHLAD likely does not apply to the events of discrimination that gave rise to her complaint" in this action.

Schoendorf then filed an amended complaint, see Fed. R. Civ. 15(a)(1)(B), asserting hostile environment and retaliation claims against RTH under the employee protections of the Maine Human Rights Act, Me. Rev. Stat. tit. 5, § 4572(1)(A), rather than the NHLAD (and maintaining her Title VII claims).  Two days later, Schoendorf moved to transfer the action to the District Court for the District of Maine.  RTH responded by moving to dismiss the amended complaint--this time, including the federal retaliation claim--and opposing the motion to transfer.

## II. **Applicable legal standard**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought."  28 U.S.C. § 1404(a).  These factors include, as this provision notes, the convenience of the parties and witnesses, see, e.g., Coady v. Ashcraft & Gerel, 223 F.3d 1, 11 (1st Cir. 2000), as well as where the events at issue in the litigation took place, the relative cost of trying the case in each forum, and the public interest in having local controversies adjudicated locally, CFTC v. Cromwell Fin. Servs., 2006 DNH 019, 5-6 (citing 17 James William Moore et al., Moore's Federal Practice § 111.13[1][b], at 111-67 (3d ed. 1997 & 2000 supp.).

The party seeking to transfer a case bears the burden of showing that transfer is appropriate.  See Coady, 223 F.3d at 11 (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)).

There is no dispute that this case "might have been brought" in the District of Maine.  As Schoendorf points out, Title VII has its own venue provision to the effect that an action claiming a violation of the statute "may be brought in any judicial district in the State in which the unlawful employment practice is alleged to have been committed," 42 U.S.C. § 2000e-5(3), which in this case is Maine.[1]  RTH also does not contest that the Maine District Court would have personal jurisdiction over it.  Instead, RTH argues that Schoendorf has not met her burden of showing that this action should be transferred to Maine.  The court disagrees.

## III. Analysis

As just noted, Schoendorf bears the burden of showing that transfer is appropriate.  RTH argues that, because Schoendorf elected to bring this action here in the first place, she faces an additional hurdle:  she must show "changed circumstances"

---

[1]The Maine court is also a proper venue for Schoendorf's claims under Maine law by virtue of 28 U.S.C. § 1391, which provides, so far as is relevant here, for venue over a corporation anywhere it is subject to personal jurisdiction.

5

since she filed the case.  As RTH acknowledges, however, a number of courts have refused to hold a plaintiff seeking transfer to this additional requirement.  See 17 Moore, supra § 111.16[1], at 111-24.  As RTH also acknowledges, that includes this court, which, in a decision by another judge, held that "a motion to transfer filed by the plaintiff is subject to the same burden as a motion to transfer filed by a defendant."  Butler v. Thompson/ Ctr. Arms Co., 2001 DNH 203, 5 (DiClerico, J.).[2]

RTH does not offer any argument why this court should not follow that decision here--only a quotation from Moore's Federal Practice that "to avoid harassment of defendants and ensure the

---

[2] At oral argument, RTH pointed out language in Butler that "[a] motion to transfer venue will be granted if the moving party makes 'a clear showing that a balancing of conveniences strongly favors the granting of a motion.'"  2001 DNH 203, 4 (quoting Buckley v. McGraw-Hill, 762 F. Supp. 430, 439 (D.N.H. 1991) (quoting Crosfield Hastech, Inc. v. Harris Corp., 672 F. Supp. 580, 589 (D.N.H. 1987))) (emphases added).  As both Buckley and Crosfield Hastech make clear, this standard is derived from the Supreme Court's decision in Gulf Oil, supra--and, as the same judge who decided Buckley later explained, "Gulf Oil did not consider the standard for transferring a case under section 1404(a), which did not exist at the time, but for dismissing a case under the common-law doctrine of forum non conveniens. Because transfer amounts to a less severe remedy than dismissal, the Supreme Court has reasoned that section 1404(a) 'permits courts to transfer upon a lesser showing of inconvenience.'"  Cromwell Fin., 2006 DNH 019, 6 (quoting Norwood v. Kirkpatrick, 349 U.S. 29, 32 (1955)) (additional citation omitted).  So this court does not take Buckley as authority for holding a party seeking transfer to any elevated burden, i.e., beyond showing that, on balance, the convenience of the parties and witnesses and the interest of justice favor transfer.

6

judicious use of Section 1404(a) transfers, it is appropriate that the plaintiff be put to a higher burden of persuasion in seeking the transfer over the objection of the defendant." 17 Moore, supra, § 111.16[2], at 111-25. But this does not appear to be an endorsement of the "changed circumstances" standard, since Moore's also observes that "decisions refusing to impose this additional requirement on the plaintiff seem the better reasoned." Id. This court agrees. As one court has noted, "[t]here is no implication of such a standard in Section 1404" itself, nor is there any reason to put that gloss on the statute, since its own "'interests of justice' standard will provide protection for both sides" against unfair forum-shopping or other harassment. Lake City Stevedores, Inc. v. S.S. Lumber Queen, 343 F. Supp. 933, 935 (S.D. Tex. 1972); see also Cordis Corp. v. Siemens-Pacesetter, Inc., 682 F. Supp. 1200, 1203 (S.D. Fla. 1987) (refusing to hold plaintiff seeking a transfer to the "changed circumstances" standard but observing that a court could "consider the existence or absence of changed circumstances in deciding whether transfer of venue is appropriate"). Accordingly, and in line with Judge DiClerico's decision in Butler, this court will not require Schoendorf to show "changed circumstances" since she filed the case here in order to justify transferring the case to the District Court in Maine.

Nor does the court find that § 1404(a)'s "interests of justice" standard counsels in favor of keeping the case here simply because this is the forum where Schoendorf originally brought it. Schoendorf has plausibly explained that she chose to file here because the EEOC had designated the NHRC as the responsible state agency--a designation she realized was mistaken only after she contacted the NHRC in response to RTH's argument (in its motion to dismiss her original complaint) that the NHLAD did not apply to the company's operations in Maine. While RTH suggests that Schoendorf should have realized the mistake earlier, it does not question her explanation.

Nor, more importantly, does RTH so much as suggest that Schoendorf's effort to transfer the case to Maine at this point amounts to improper forum shopping or harassment. Indeed, that would be a difficult argument to sustain, given that Schoendorf moved to transfer this case less than three months after she filed it and and less than three weeks after RTH filed its response to the original complaint less than two months ago. Moreover, this court has yet to decide any issue of substance, and has not even conducted a preliminary pretrial conference or entered a scheduling order.[3]

---

[3]This posture distinguishes the cases that RTH cites in support of its argument that Schoendorf's motion should be denied

RTH's protest that it "has already expended time and money in retaining counsel in this jurisdiction, and in defending itself against [the] claims in this court, including filing various motions and answering the original complaint" is overstated. Transferring the case to Maine will not require RTH to start its defense anew there; everything RTH has filed on this court's docket will simply be transferred to that court in its entirety, including the pending motion to dismiss the amended complaint. Although, as RTH also points out, it will have to retain a member of the bar of the Maine District Court to appear as local counsel on its behalf, see D. Me. R. 83.1(c)(1), this is at worst a minor inconvenience, and, indeed, is the necessary consequence of almost any interjurisdictional transfer. Cf.

---

for the want of changed circumstances. See Am. Home Assur. Co. v. Glovegold, Ltd., 153 F.R.D. 695, 700 (M.D. Fla. 1994) (action had been set for an imminent trial in the transferor district, but "would go immediately to the bottom of the pile" in the transferee district, so the transfer motion was denied as "rather too close to the eleventh hour"); Est. of Fothergill v. Parker, No. 83-963, U.S. Dist. LEXIS 16285, at *6-*7 (D. Mass. May 30, 1984) (because transferee district prevented out-of-state attorneys "unless accompanied or replaced by New Hampshire counsel," transfer of the action more than a year after it had been filed would have caused defendants to incur "significant legal expenses"). The fact that RTH will have to hire local counsel to appear in the Maine District Court, as discussed infra, is the inevitable result of almost any transfer, and is not tantamount to the prejudice the defendants faced in Fothergill, where they would have needed to get local counsel up to speed on a year's worth of progress in the case or, indeed, replace their existing counsel (as the court suggested).

Jackson Nat'l Life Ins. Co. v. Economou, 557 F. Supp. 2d 216, 222 (D.N.H. 2008) (noting that "[t]he location of the parties' respective counsel has little bearing on [the transfer] analysis" where they would simply retain counsel in the transferee forum). The fact that Schoendorf originally filed this action here, then, does not militate against allowing her to transfer it to the Maine District Court at this early stage.

None of the other factors usually considered in deciding a motion to change venue under § 1404(a) weighs against the transfer either.  First, transferring the case to Maine will, on balance, better serve the convenience of the witnesses.  There are four third-party eyewitnesses to the alleged acts of harassment and retaliation who live in Maine:  the union representative who attended the meeting where the project manager allegedly threatened to "write [Schoendorf] up for everything," the project manager himself, and two other employees who witnessed the foreman's alleged harassment of Schoendorf. Schoendorf identifies two other potential third-party witnesses who live in that state as well:  another person who worked on the same job site and "interacted with Schoendorf shortly after" some of the alleged harassment, as well as another union official who spoke to Schoendorf about her complaints.

10

In response, RTH points to other witnesses who live in New Hampshire, all of whom are its current or former employees:  its owner, its office manager, the foreman, the site supervisor, and another employee who witnessed the incident of alleged sexist profanity.  But is not clear, and RTH does not explain, why the company's owner or office manager would have firsthand knowledge of any of the events at issue in this lawsuit, so their presence in New Hampshire carries little if any weight in the transfer analysis.  See Demers v. Pilkington, N. Am., Inc., 2010 DNH 193, 17 (giving little weight to the location of defendant's employees where it failed to explain their relevant knowledge).  Most of the witnesses who live in Maine, in contrast, personally witnessed the key events at issue in this case.  While RTH has identified other such witnesses living in New Hampshire, the fact remains that there are more such witnesses in Maine (in addition to two other witnesses who, Schoendorf claims, could corroborate some of her key allegations).

RTH also argues that, if this action is transferred to Maine, it will be assigned to that district's Bangor courthouse, see D. Me. R. 3(b), which is actually a greater distance than this courthouse from some of the witnesses who live in Maine.  On inquiry from this court during oral argument, however, the Maine District Court stated that it would assign the case to its

11

Portland courthouse if this court, in transferring the case, found that location to better serve the convenience of the witnesses.  This court so finds based on the fact that all but one of the third-party witnesses lives closer to Portland than to Bangor.  So the convenience of witnesses factor cuts in favor of transferring the case.

Second, and relatedly, the comparative costs of trying the case in each forum (and the overlapping concern of access to sources of proof) cuts in favor of transfer to Maine, but also only slightly.  Here, these factors boil down to the relative ease of obtaining the trial testimony of third-party witnesses, since the aggregate costs of litigating the case would seem to be the same in either forum, and, as this court has observed, the physical location of relevant documents has "little weight, given the ease of preparing and transmitting exhibits with contemporary technology."[4]  Cromwell, 2006 DNH 019, 11 n.7.

Four of the six potential third-party witnesses located in Maine live more than 100 miles from this courthouse and, as a result, cannot be compelled to testify at trial here by subpoena.

---

[4]In any event, there is no reason to believe that this case will be particularly document-intensive.  Under the circumstances presented here, the fact that RTH's "human resources and employment records" are located in New Hampshire, as it claims, carries virtually no weight in the transfer calculus.

See Fed. R. Civ. P. 45(3)(A)(iii).  RTH argues that three of these witnesses also reside more than 100 miles from the courthouse in Bangor, so they cannot be subpoenaed to testify at trial there, either.  But, as just discussed, this case will likely be tried not in Bangor, but in Portland, and all of the third-party witnesses live within 100 miles of that courthouse.[5]  Furthermore, all of the third-party witnesses who reside in New Hampshire likewise live within 100 miles of the Portland courthouse.  The comparative costs of trying the case in each forum, and the related factor of ease of access to sources of proof, cut in favor of transferring the case to Maine.[6]

---

[5] Even if the case were tried in Bangor, Rule 45(b)(2)(A) authorizes service of a subpoena anywhere "within the district of the issuing court."  It is true that this rule, by its terms, is subject to Rule 45(c)(3)(A)(ii), which requires a subpoena to be quashed on motion if it calls for a non-party "to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person."  But that rule contains an exception for a subpoena "to attend a trial by traveling from any such place within the state where the trial is held."  Thus, "[u]nder [this] rule, a federal court can compel a witness to come from any place in the state to attend trial."  Fed. R. Civ. P. 45(c)(3)(A) advisory committee's note (1991). Contrary to RTH's argument, then, all of the witnesses living in Maine could be subpoenaed to testify at trial in that district, even if the case were tried in Bangor.

[6] RTH complains that Schoendorf simply assumes that her likely third-party witnesses will refuse to testify absent subpoena, without providing any information about their willingness to testify voluntarily.  But RTH makes the same assumption, and fails to provide the same information, as to its likely third-party witnesses--and neither party's approach is

Third, the convenience of the parties also weighs in favor of transfer. RTH argues that, because it is headquartered in New Hampshire, transferring the case to Maine will inconvenience it just as much as leaving the case in New Hampshire will inconvenience Schoendorf. It is true that "[t]ransfer is inappropriate if the effect is merely to shift inconvenience from one party to the other." Buckley, 762 F. Supp. at 439. But "the relative financial means of the parties is also a relevant consideration in the convenience analysis." Johnson v. Gen. Dynamics Info. Tech., Inc., 675 F. Supp. 2d 236, 243 (D.N.H. 2009) (citing 17 Moore, supra, § 111.13[1][e], at 111-75--76).

Here, this consideration weighs in favor of a transfer to Maine. Schoendorf has submitted an affidavit attesting that she is permanently disabled due to a work-related injury (which occurred subsequent to the events at issue here) and has no source of income other than the resulting workers' compensation benefits and modest child support payments. RTH has not questioned this account, nor has it claimed that transferring the

---

particularly surprising in a case that was filed just six months ago and involves a relatively high number of likely third-party witnesses. Thus, while it is preferable that the party seeking transfer due to witnesses beyond the subpoena power of the court provide information on their willingness to testify voluntarily, see Demers, 2010 DNH 193, 18 n.8, the fact that Schoendorf did not do so here does not count that strongly, if at all, against transfer.

14

case to Maine will cause it any unusual hardship, i.e., beyond the minor inconvenience inevitably suffered by a corporation defending a case in a neighboring state. The convenience of the parties, then, also cuts in favor of transfer. See id. (finding transfer to plaintiff's preferred forum appropriate where he had "limited financial resources--certainly as compared to [the corporate defendant's]--and that it would be a financial hardship for him to litigate [in the defendant's preferred forum]").[7]

Fourth, the events at issue in the litigation all happened in Maine, so that factor cuts in favor of transfer as well. See, e.g., Jackson, 557 F. Supp. 2d at 221 (finding transfer to a forum appropriate where "the events that will determine the outcome occurred" there). Fifth, and relatedly, so does the interest in having local controversies adjudicated locally. RTH points out that deciding this case will principally involve questions of federal law under Title VII and that, insofar as Maine's employment discrimination law does not completely align with its federal counterpart, see, e.g., Forrest v. Stinson Seafood Co., 990 F. Supp. 41, 43-44 (D. Me. 1998) (noting that

---

[7]The court appreciates that, unlike the large defense contractor that was the defendant in Johnson, RTH is a small company with only a few dozen employees. The fact remains, however, that RTH is better able to shoulder the inconvenience of transfer than Schoendorf, for the reasons just discussed.

15

Maine courts have "consistently looked to the federal law for guidance" in interpreting the MHRA, but only insofar as its provisions are equivalent to those of the federal employment statutes), applying it should pose no problem for this court.

This is a fair point. Cf. Demers, 2010 DNH 193 (observing that, in light of this court's familiarity with Massachusetts law, its application in a case "hardly necessitates transferring" it). For purposes of the transfer analysis, however, the concept of "local interest" encompasses considerations beyond a court's presumed facility with the law of its home state. As the Supreme Court has observed, the "local interest in having localized controversies decided at home" also includes having the case decided by jurors from the community with the strongest "relation to the litigation," in a trial in the "view and reach" of that community. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508-09 (1947). That community is unquestionably that of central Maine, where, again, all of the allegedly discriminatory and retaliatory conduct took place.

In the final analysis, then, this is an action by a plaintiff who lives in Maine, arising out of alleged conduct by the defendant's employees that occurred in Maine--conduct that was witnessed by other employees who live, for the most part, in Maine. Though the plaintiff nevertheless brought this action in

16

New Hampshire, she has articulated a plausible reason for doing so, and transferring the case to Maine at this very early stage will occasion no unfair prejudice--nor any real inconvenience--to RTH.  Based on these considerations, Schoendorf has carried her burden to show that "the convenience of parties and witnesses" and "the interest of justice" favor transferring this action to the District of Maine under 28 U.S.C. § 1404(a).

### III. Conclusion

For the foregoing reasons, Schoendorf's motion for transfer of venue[8] is GRANTED.  The clerk shall transfer this action to the United States District Court for the District of Maine, and close the case here.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated:  May 31, 2012

cc:  Jeffrey Neil Young, Esq.
     Lauren S. Irwin, Esq.
     Debra Dyleski-Najjar, Esq.

---

[8]Document no. 11.

17